IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD CARMICKLE,                )
                                 )
        Plaintiff,                ) Civil No. 04-1471-JO
                                 )
    v.                           ) OPINION AND ORDER
                                 )
COMMISSIONER, SOCIAL SECURITY    )
ADMINISTRATION,                  )
                                 )
        Defendant.                )

Tim D. Wilborn
TIM D. WILBORN, ATTORNEY AT LAW
2020-C S.W. Eighth Avenue
PMB #294
West Linn, OR  97068

  Attorney for Plaintiff

Neil J. Evans
Assistant United States Attorney, District of Oregon
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

Lucille G. Meis
Richard A. Morris
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue, Suite 2900
M/S 901
Seattle, WA 98104-7075

   Attorneys for Defendant

JONES, Judge:

Plaintiff Ronald Carmickle seeks judicial review of the final administrative decision of the Social Security Commissioner, denying his application for disability insurance benefits (DIB), pursuant to 42 U.S.C. §423, and Supplemental Security Income (SSI) benefits, pursuant to 42 U.S.C. §§1381a, 1382c(a)(3)(A). Plaintiff contends that he is eligible for such benefits under §§ 216(i), 223, and 1614(a)(3)(A) of the Social Security Act. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, this court holds that the Commissioner's decision is affirmed.

## ADMINISTRATIVE HISTORY

Plaintiff's alleged disability started on July 25, 2001. Plaintiff filed applications for SSI on January 27, 2002, and for DIB on May 29, 2002. Since the onset date, plaintiff maintains that he is prevented from engaging in any substantial gainful activity due to a combination of impairments, including degenerative disc disease, peripheral vascular disease, peripheral neuropathy, carpal tunnel syndrome, a personality disorder, chronic pain syndrome, and depression. (Pl.'s Br. (# 13) at 2.) His applications for DIB and SSI were denied, both initially and upon reconsideration. Plaintiff then timely requested a hearing before an Administrative Law Judge (ALJ). On November 24, 2003, plaintiff, represented by counsel, appeared and testified at the hearing; as did plaintiff's lay witness, Mr. Tom Tucker; a vocational expert (VE),

Patricia Ayerza; and an impartial medical expert, Dr. William DeBolt, M.D. Following the administrative proceedings, conducted by ALJ Joseph Schloss, plaintiff's applications for both DIB and SSI were denied in a January 20, 2004 decision. The ALJ's decision became the final decision of the Social Security Commissioner on August 26, 2004, when the Appeals Council declined review. Plaintiff now seeks judicial review of the Commissioner's decision.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). "Substantial evidence means more than a scintilla but less than a preponderance." Andrews, 53 F.3d at 1039. The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). In reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Andrews, 53 F.3d at 1039-40.

To qualify for benefits, a plaintiff must show that a medically determinable physical or mental impairment prevents him from engaging in substantial gainful activity, and that the impairment is expected to last for a continuous period of at least twelve months or result in death. 42 U.S.C. § 423(d)(1)(A) (2004). The plaintiff carries the initial burden of showing that

he is disabled. Id. at § 423(d)(5); Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). When a plaintiff successfully establishes his or her inability to do prior work, the burden shifts to the Secretary to show that the plaintiff can perform other substantial gainful activity, considering the plaintiff's age, education and work experience. Delorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

## DISABILITY ANALYSIS AND SUMMARY OF THE ALJ'S FINDINGS

The Commissioner utilizes a five-step sequential evaluation process to determine whether a person is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. "If at any step a finding of disability or non-disability can be made, the [Commissioner] will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003).

First, the ALJ determined that plaintiff has not engaged in any substantial gainful activity since the onset of his alleged disability. Tr. 28;[1] *see* 20 C.F.R. § 416.920(b).

Second, the ALJ concluded from medical evidence that the plaintiff suffers from the following: (1) degenerative joint disease, (2) degenerative disc disease, (3) peripheral neuropathy, and (4) peripheral vascular disease. Tr. 25. The ALJ found these impairments to be "severe" based on the requirements of 20 C.F.R. §§ 404.1520(c) and 416.920(c). Tr. 28.

---

[1] Citations to the official transcript of record filed with the Commissioner's Answer (# 9) on February 17, 2005, are referred to throughout as "Tr."

Third, relying upon the testimony of Dr. DeBolt, the ALJ found that plaintiff's severe impairments were not severe enough to meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. Tr. 28; *see* 20 C.F.R. § 416.920(e).

Fourth, considering the physical and/or mental limitations that affect plaintiff's ability to perform work-related tasks, the ALJ determined that plaintiff has a residual functional capacity (RFC) to sit two hours, stand two hours, and walk four hours out of an eight hour day. Tr. 28. Plaintiff requires a job that would permit him to alternate between standing and sitting at fifteen minute intervals, and he is limited to lifting ten pounds frequently and eleven to twenty pounds occasionally. Id. Plaintiff can occasionally bend, squat, crawl and climb. Tr. 28-29; *see* 20 C.F.R. § 416.920(e). The ALJ determined that plaintiff's past relevant work included positions as a counter sales person, a construction supervisor, an auto sales person, and a construction worker. Tr. 29. Furthermore, the ALJ found that plaintiff's medically determinable limitations do not prevent him from performing the physical and mental demands of his past relevant work as a counter sales person and as a construction supervisor. Tr. 29; *see* 20 C.F.R. § 416.920(f).

Finally, the ALJ found issues of credibility with plaintiff and plaintiff's lay witness, Mr. Tom Tucker. The ALJ gave less weight to both sets of testimony regarding plaintiff's physical limitations because it was contrary to the treatment record, and contrary to the fact that plaintiff was successfully attending classes at Portland Community College as a full-time student. Tr. 26.

Because the ALJ determined that plaintiff was not disabled at step four, using the RFC as determined by relevant medical evidence, there is no further requirement to proceed to step five and determine whether plaintiff maintains the RFC to perform other work existing in significant

numbers in the national economy. *See* Barnhart, 540 U.S. at 24.

## DISCUSSION

I. **PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF SHOWING AN INABILITY TO RETURN TO PAST RELEVANT WORK**

Plaintiff bears the initial burden of showing that he cannot perform his past relevant work. 20 C.F.R. §§ 404.1512(a), 404.1520(f). "If the plaintiff's impairment is not on the list [found at 20 C.F.R. Pt. 404, Subpt. P, Appendix 1], the inquiry proceeds to step four, at which point the [Commissioner] assesses whether the plaintiff can do his previous work; unless he shows that he cannot, he is determined not to be disabled." Barnhart, 540 U.S. at 25. "[S]tep four can result in a determination of no disability without inquiry into [step five] whether the plaintiff's previous work exists in the national economy; the regulations explicitly reserve inquiry into the national economy for step five." Id.

Plaintiff contends that the ALJ relied on the erroneous testimony of the VE, who improperly classified plaintiff's past relevant work. (Pl.'s Br. at 7.) Social Security Ruling 82-62 provides the following relevant guidelines:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW [prior relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

S.S.R. 82-62, *available at* 1982 WL 31386, at *3 (1982). In step four analysis, a VE may be

examined by the ALJ to offer expert opinion testimony concerning the physical and mental demands of a plaintiff's past relevant work, either as actually performed, or as generally performed in the national economy. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). The role of the VE is to "translate factual scenarios into realistic job market probabilities." Sample, 694 F.2d at 643. In this case, the VE was present at the hearing, had an opportunity to review the record, and was questioned by the ALJ. Tr. 341.

    A.    <u>Plaintiff's Prior Work as a Construction Supervisor</u>

Plaintiff describes his prior position as involving "lifting up to 100 pounds or more and supervising people 20 percent of the time." Tr. 104, 115. According to plaintiff, he had to repeatedly lift objects with weights ranging from a hammer to heavy beams or rolls of vinyl. Tr. 104. Plaintiff testified that "[he] had to work like everyone else. [He] had to carry boards, move heavy objects, bend and stoop constantly, everything all the other help did." Tr. 115. Pursuant to 20 C.F.R. § 416.960(b)(2), the ALJ asked the VE to identify the exertion and skill levels of plaintiff's construction supervisor work, both as the Dictionary of Occupational Titles (DOT) described it and as plaintiff described it. The VE replied that the DOT lists the construction supervisor position as skilled "light" work. However, the VE notes that as plaintiff describes it, the position would be considered "heavy" work. Tr. 343.

Plaintiff contends that when the ALJ found that plaintiff could return to his past relevant work as a construction supervisor, the ALJ committed a reversible error by relying on the DOT and the VE's testimony characterizing the job "as generally performed" in the national economy, instead of relying primarily on plaintiff's "as actually performed" description. (Pl.'s Br. at 9.)

Social Security Ruling 82-61 describes three possible tests to classify past relevant work

7 - OPINION AND ORDER

in order to determine whether a claimant can perform such work. S.S.R. 82-61, *available at* 1982 WL 31387 (1982). When applying the third test, the Social Security Administration recognized that there would be situations regarding exertion levels where some discrepancy would exist between individual jobs "as actually performed" and the DOT's "as generally performed" descriptions. In such a situation, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be '"not disabled."' Id. at *2. The ALJ followed the third test precisely. He specifically asked the VE what exertion level the DOT listed for construction supervisor; she replied, "light." Tr. 343. Because the ALJ, in step three of the RFC determination, found that plaintiff could perform light work, and the exertion level for plaintiff's previous relevant work as a construction supervisor as performed throughout the economy was listed as light under the DOT, the ALJ was correct in finding that plaintiff was able to return to his past relevant work and therefore was not disabled.

Additionally, plaintiff contends that the VE mischaracterized his former position as a "construction supervisor" when the correct term title should be "straw boss." (Pl.'s Br. at 19.) Straw boss is defined as:

> A term applied to a worker who takes the lead in a construction or laboring crew and is selected to expedite the work of the crew, usually small in number. Regularly performs all duties of workers in crew. Explains tasks to new members. The supervisory functions are incidental to the duties performed as a member of the crew. Classifications are made according to the type of work performed by crew.

U.S. Dep't of Labor, Employment and Training Administration, Dictionary of Occupational Titles 9 (4th ed. rev. 1991). Plaintiff argues that the VE's mischaracterization changes the

8 - OPINION AND ORDER

outcome of this case. Because a straw boss's exertion level is determined by the type of work performed by the crew, and because plaintiff was allegedly a straw boss of a crew engaged in medium level work (carpentry), plaintiff is unable to return to his prior work because his RFC limits him to light level work only.

I find that the ALJ did not err when he relied on the VE's characterization of plaintiff's past relevant work. In the present case, the apparent confusion as to the job title of plaintiff's prior relevant work begins with plaintiff himself. He has charactertized his former position as: (1) "job supervisor," Tr. 73; (2) "supervisor," Tr. 86; (3) "construction supervisor (working)," Tr. 103; (4) "carpenter," Tr. 115; and finally, as (5) "lead carpenter," Tr. 128. The VE was present at the hearing, listened to plaintiff's testimony, reviewed plaintiff's work history, and then utilizing the record as a whole, reasonably categorized plaintiff's prior work as a construction supervisor, not as a straw boss.

Although the claimant is the "primary source of information" regarding exertional demands of past work, an ALJ can consult supplemental information from other sources, such as employers or the DOT. *See* S.S.R. 82-62, *available at* 1982 WL 31386, at *3. Furthermore, an ALJ may rely on the testimony of a VE, who "may offer relevant evidence within his or her expertise or knowledge . . . . Such evidence may be helpful in supplementing or evaluating the accuracy of claimant's description of past work." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). The ALJ is entitled to rely on the knowledge and expertise of the VE when evaluating the accuracy of plaintiff's description of past work. The ALJ did just that in this case. The VE's testimony was based on substantial evidence, and the ALJ's conclusion that plaintiff worked as a construction supervisor was a rational interpretation of the VE's testimony. The ALJ also took

into account plaintiff's testimony that the construction supervisor position, as actually performed by plaintiff, had a higher exertional level than a construction supervisor position as generally performed in the national economy.

Accordingly, the ALJ correctly applied the third test found in S.S.R. 82-61, which states, "if a claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" S.S.R. 82-61, *available at* 1982 WL 31387, at *2. The ALJ, following this language, correctly determined that plaintiff was not disabled. *See* Id.

B.    Plaintiff's Prior Work as a Sales Clerk

Plaintiff alternatively characterizes a prior work position as a "sales clerk" for a lumber supply store, Tr. 103, and as a "counter sale/customer service" job. Tr. 73. He describes the position as requiring walking and standing all day long, using computers, cash registers, and saws, and advising customers as to product suggestions. Tr. 105. Exertionally, the job required plaintiff to occasionally lift lumber to assist customers and stock shelves; the weights would vary from something as small as a hammer to occasionally 100 pounds or more. Id.

The VE testified that the "counter sales position would be considered light." Tr. 343. When the ALJ asked the VE if plaintiff's RFC would preclude him from returning to his prior work, the VE replied that according to the DOT, plaintiff would be able to return to his previous counter sales work.

Plaintiff raises the same arguments that were raised regarding the construction supervisor position. First, plaintiff argues that because the ALJ relied on the VE's "as generally performed"

standard instead of plaintiff's "as actually performed" testimony, the ALJ committed reversible error. (Pl.'s Br. at 15.) This similar argument suffers from similar defects. The ALJ may base his decision on the functional demands and job duties as generally required by employers throughout the economy. *See* S.S.R. 82-61, *available at* 1982 WL 31387, at *2. Accordingly, since the VE testified that the counter sales position as generally performed in the national economy is considered light work, and the plaintiff is limited by his RFC to only light work, the ALJ correctly determined that the plaintiff is able to return to his prior counter sales work, and therefore is not disabled.

Second, plaintiff contends that the VE mischaracterized plaintiff's prior job description, and that the ALJ committed reversible error because the ALJ relied on the VE's allegedly erroneous characterization. (Pl.'s Br. at 15.) The ALJ is entitled to rely on the expert opinion testimony of the VE. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). In adopting the VE's opinions regarding plaintiff's job title, the ALJ's decision was a rational one based on substantial evidence. Again, plaintiff testifies that his prior counter sales position, as actually performed, required a greater exertional level than generally found in the national economy according to the DOT. Again, the ALJ acted correctly in applying S.S.R. 82-61 to find that plaintiff was not disabled.

## II. THE ALJ'S TREATMENT OF TESTIMONY AND MEDICAL OPINIONS

### A. The ALJ's Rejection of Plaintiff's Testimony

An ALJ may consider the following factors when evaluating the credibility of a plaintiff: (1) reputation for truthfulness, (2) inconsistencies in either plaintiff's testimony or between testimony and conduct or daily activities, (3) work record, and (4) testimony from physicians and

11 - OPINION AND ORDER

third parties concerning the nature, severity and effect of the symptoms about which plaintiff complains. Thomas v. Barnhart, 278 F.3d 947, 958-959 (9th Cir. 2002).

Plaintiff challenges the ALJ's rejection of his testimony as deficient because the ALJ fails to give "clear and convincing" reasons for rejecting certain portions of plaintiff's testimony. (Pl.'s Br. at 20.) In support, plaintiff argues that "[u]nless there is affirmative evidence showing that the [plaintiff] is malingering, the Commissioner's reasons for rejecting the [plaintiff's] testimony must be 'clear and convincing.'" Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

However, the requirement that an ALJ give clear and convincing reasons for rejecting a plaintiff's testimony relates to the rejection of "medically related symptoms" evidence. Swenson, 876 F.2d at 687. When a plaintiff testifies that his or her symptoms are more disabling than would be medically expected, Swenson requires that the "Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptom and no evidence affirmatively suggests that the plaintiff was malingering." Id.

In the present case, the ALJ is not rejecting medically related symptoms evidence, because the plaintiff is not alleging that his symptoms are somehow more disabling to him than to others. Rather, the evidence that the ALJ rejected relates to plaintiff's allegations about requiring constant position changes and his allegations of memory problems. Tr. 26. The applicable standard for this type of evidence requires the ALJ to "identify what testimony is not credible and what evidence undermines the plaintiff's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ did this when he found that

"plaintiff's ability to attend school on a full-time basis is not consistent with his allegations of requiring constant position changes or his allegations of memory problems." Tr. 26. The ALJ ruled correctly by clearly identifying the testimony he deemed non-credible, and by highlighting the evidence he believed undermined plaintiff's allegations.

Furthermore, an ALJ may also discount a plaintiff's subjective complaints by pointing out inconsistencies between the complaints and plaintiff's daily activities. Thomas, 278 F.3d at 958-59. The ALJ in this case determined that plaintiff's daily activity of successfully attending community college as a full-time student was inconsistent with plaintiff's allegations of requiring constant position changes and of memory issues. Tr. 26. The ALJ correctly utilized the discrepancy between these two sets of information, not to make a determination as to plaintiff's ability to carry out sustained work, but to impugn plaintiff's credibility.

Finally, although the ALJ is not required to provide clear and convincing evidence to reject portions of plaintiff's testimony, such evidence exists in the record to support the ALJ's decision. An inconsistency between a plaintiff's testimony and relevant medical evidence is a clear and convincing reason to reject a plaintiff's testimony. Johnson v. Shalala, 60 F.3d 1428, 1433-1434 (9th Cir. 1995). Dr. Mark A. Patton noted that plaintiff had the ability to lift 20 pounds occasionally and 10 pounds frequently, Tr. 26; however, plaintiff testified that he could only lift 10 pounds occasionally, up to three times in a workday. Tr. 323. Because this discrepancy is between plaintiff's testimony and relevant evidence from one of plaintiff's treating physicians, the ALJ had a clear and convincing reason to reject the inconsistent portions of

plaintiff's testimony. Accordingly, the ALJ properly discounted the credibility of portions of plaintiff's testimony relating to exertional capabilities, memory loss, and the necessity of constant position changes.

B. The ALJ's Rejection of Lay Witness Testimony

Plaintiff challenges the ALJ's rejection of parts of the testimony given by plaintiff's lay witness, Mr. Tom Tucker. Mr. Tucker, who attended classes with plaintiff, testified that plaintiff had issues with sitting and concentrating in class. Tr. 136. Lay testimony regarding a plaintiff's symptoms "is competent evidence that an ALJ must take into account." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). However, if an ALJ decides to disregard such evidence, he may do so if it conflicts with medical evidence, or if the ALJ provides reasons which are "germane to each witness." Id.

I find that the ALJ provided reasons for rejecting Mr. Tucker's testimony which were germane to that testimony. Mr. Tucker testified about objective manifestations of plaintiff's discomfort while attending classes. The ALJ discounted the witness's statement of in-class discomfort by comparing it to evidence of plaintiff's in-class success. The ALJ found, "while the plaintiff may require position changes and appear confused at times, he has been successfully completing his course work for over a year as a full-time student." Tr. 26. Therefore, the record shows that the ALJ properly rejected those portions of Mr. Tucker's testimony.

C. The ALJ's Rejection of Medical Opinions

The three recognized types of medical sources are: (1) physicians who treat the plaintiff (treating physicians); (2) physicians who examine, but do not treat the plaintiff (examining physicians); and (3) physicians who neither examine nor treat the plaintiff (non-examining

14 - OPINION AND ORDER

physicians). Holohan v. Massanari, 246 F.3d 1195, 1201-1202 (9th Cir. 2001). If the opinion of a treating physician remains uncontradicted by another physician, the ALJ may reject it only for clear and convincing reasons supported by substantial evidence in the record. Id. at 1202; Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). If there are discrepancies between a treating physician's opinion and other evidence, "an ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she or he provides "specific and legitimate" reasons supported by substantial evidence in the record." Holohan, 246 F.3d at 1202. (quoting Lester, 81 F.3d at 830).

    1.    Mark A. Patton, D.O.

Dr. Patton, one of plaintiff's treating physicians, examined and treated plaintiff for several years. Since December 2001, he has conducted multiple examinations of plaintiff and thus has had the opportunity to observe plaintiff's symptoms over time. Plaintiff notes that while the ALJ adopted many of Dr. Patton's medical opinions, he did not adopt them all. Plaintiff contends that the ALJ erred because he did not mention Dr. Patton's opinions that plaintiff "should never climb and should avoid all exposure to hazards." (Pl.'s Br. at 25.) However, the ALJ's written opinion states that plaintiff "can never climb [and] [h]e should avoid exposure to hazards." Tr. 27. Additionally, plaintiff alleges that the ALJ "did not mention Dr. Patton's opinions that [plaintiff] was significantly impaired in the ability to perform gross manipulation in terms of rotary movement." (Pl.'s Br. at 25.) However, the record shows that the ALJ considered and then discounted Dr. Patton's opinion regarding this particular impairment, writing that "Dr. Patton's manipulative limitations are given little weight." Tr. 27. The ALJ discounted plaintiff's motor-skill limitations because they are "based on plaintiff's recent diagnosis of

15 - OPINION AND ORDER

tendinitis, which is not expected to result in any significant work-related functional limitations for any 12 month period." Tr. 27. The ALJ's findings are proper because before a plaintiff's disability can be considered by the ALJ, the disability "must have lasted or be expected to last for a continuous period of at least 12 consecutive months." 20 C.F.R. § 1509 (2005). The ALJ gave significant weight to Dr. Patton's November 2002, and November 2003, examinations to the extent that each corroborated the other. I find that the ALJ correctly addressed and considered the limitations that were most supported by the record as a whole and correctly discounted the others.

      2.     <u>Gajanan Nilaver, M.D.</u>

Plaintiff contends that the ALJ committed reversible error when he gave "little weight" to the medical opinions of Dr. Nilaver, an examining physician. (Pl.'s Br. at 25.) Dr. Nilaver concluded that plaintiff was "capable of sedentary work not requiring bending, lifting, carrying, walking or prolonged standing." Tr. 149. The ALJ noted, however, that Dr. Nilaver's examination and conclusions of June 29, 2001, were made prior to the alleged disability onset date, and at the time plaintiff was working two jobs which required light exertion. Tr. 26. Because Dr. Nilaver's diagnosis of plaintiff's limitations happened before the onset date, the ALJ was correct in assigning little weight to Dr. Nilaver's opinion on this issue.

Plaintiff further contends that the ALJ committed reversible error in assigning Dr. Nilaver's medical opinions little weight because plaintiff was suffering from debilitating injuries before the disability onset date. In support of this contention, plaintiff alleges that a month after the examination by Dr. Nilaver, he was unable to continue performing such active work because of the onset of disabling symptoms. (Pl.'s Br. at 25.) The ALJ, in support of his decision to

assign little weight to the opinions of Dr. Nilaver, utilized a medical diagnosis report that stemmed from a worker's compensation claim filed by plaintiff. Tr. 26. The November 2, 2001, report is a summary of the medical evaluations conducted by examining physicians Jon C. Vessely, M.D. and Brian D. Denekas, M.D. The summary states that, "[plaintiff] reports that on the date he lifted the vinyl roll [July 22, 2001], he did not have any significant back pain . . . [even though] he did feel the need to "rest his back"; however, he was able to continue working and worked Monday and Tuesday." Tr. 151. Additionally, the report notes that, "[plaintiff] specifically denies any significant previous injuries to the low back and none are documented in the medical record." Tr. 153. The report concluded that plaintiff was suffering from a pre-existing lumbar degenerative disease, and that, "based on a critical review of the historical documents, there is no history to support a cause-and-effect relationship between work and his current complaints." Tr. 155.

The ALJ is entitled to draw inferences logically flowing from the evidence. <u>Sample</u>, 694 F.2d at 642. The decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. <u>Andrews</u>, 53 F.3d at 1039-40. In the present case, the ALJ gave greater weight to the opinions of Drs. Vessely and Denekas than to the opinions of Dr. Nilaver. Logically, a medical exam conducted after the alleged onset date would be more pertinent to establishing the existence of a disability than a medical exam conducted before the alleged onset date. The ALJ rationally interpreted the evidence presented in the underlying record and did not err when he assigned little weight to Dr. Nilaver's opinions.

Upon careful review of the record regarding the ALJ's treatment of the available medical opinions, I find no factual basis to support plaintiff's contentions that the ALJ improperly

17 - OPINION AND ORDER

rejected or discounted valid testimony, whether such testimony was from plaintiff, plaintiff's lay witness, or from physicians. Although plaintiff alleges numerous violations, I find very little support for plaintiff's claims that the ALJ committed reversible errors when he discounted certain evidence in favor of other evidence. The ALJ's handling of the medical evidence and his credibility findings were a rational interpretation logically flowing from substantial evidence found in the underlying record.

III.   THE ALJ'S HYPOTHETICAL TO THE VOCATIONAL EXPERT

Plaintiff contends that the hypothetical which the ALJ posed to the VE was legally deficient because the ALJ failed to include all of plaintiff's limitations. (Pl.'s Br. at 27.) During the administrative hearing, the ALJ presented the VE with the following hypothetical:

> I want you to assume a 49 year old individual with an 11th grade education who has done those same past relevant jobs . . . who can sit two hours out of a day, can stand two hours out of a day, [and] can walk four hours out of a day. Sitting and standing should be not more than 15 minutes at a time. The walking [limited to] 30 minutes at a time . . . occasionally [he] can bend, squat, crawl, and climb, [has] no difficulties in reaching, can carry 11 to 20 pounds occasionally, can lift frequently up to ten pounds and occasionally 11 to 20 pounds, [and his] push and pull is within weight limits.

Tr. 344. The VE found that, according to the DOT, plaintiff would be able to return to work as a construction supervisor or to a customer service job. Plaintiff only generally alludes to the limitations that the ALJ omitted from the hypothetical, and then contends that "because of such failings the ALJ's decision is not supported by substantial evidence." (Pl.'s Br. at 27.)

An ALJ must pose a hypothetical question that is based on the medical assumptions supported by substantial evidence in the record, and that reflects the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2000). An ALJ's hypothetical only needs to include those limitations which he determines to be credible. Magallanes v. Bowen, 881 F.2d

18 - OPINION AND ORDER

747, 756-57 (9th Cir. 1989). As discussed above, the ALJ's credibility findings and his handling of the medical evidence were based on substantial evidence in the record. The ALJ's determination of plaintiff's RFC was legally correct, as discussed above, and the ALJ gave sufficient reasons as to why he gave more weight to some medical opinions and less to others. Accordingly, the hypothetical presented to the VE in this case was not legally deficient and I find that the ALJ did not err in this regard.

## CONCLUSION

This court must affirm the Commissioner's decision when it is based upon proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. The Commissioner's denial of benefits must be upheld even when the evidence is susceptible to more than one rational interpretation, so long as one interpretation supports the Commissioner's decision. For the foregoing reasons, the Commissioner's decision to deny benefits to plaintiff is based on correct legal standards and is supported by evidence in the record. The Commissioner's denial of plaintiff's applications for DIB and SSI benefits is AFFIRMED; accordingly, this matter is DISMISSED.

IT IS SO ORDERED.

DATED this 20th day of October, 2005.

    /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge